UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:20-CR-2 (JAM) |
| | : | |
| v. | : | |
| | : | |
| CARLOS BARNES | : | October 28, 2020 |

## GOVERNMENT'S SENTENCING MEMORANDUM

The Government submits this memorandum in aid of the sentencing of the defendant, Carlos Barnes, which is presently scheduled for November 4, 2020. The Government submits this memorandum in response to the Defendant's Memorandum in Aid of Sentencing filed on October 21, 2020 ("Defendant's Sentencing Memorandum") (Dkt. No. 42). On July 9, 2020, the defendant pled guilty (Dkt. No. 32) to a one-count indictment (the "Indictment") (Dkt. No. 1) charging him with Unlawful Possession of a Firearm by a Convicted Felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

### I. BACKGROUND

#### A. The Offense and Relevant Conduct

The basic and uncontested facts of this offense are summarized accurately at paragraphs 5-10 of the Presentence Report ("PSR") (Dkt. No. 40).[1] The facts outlined in the PSR describe the events leading up to and including the search of a vehicle, where the defendant was found with the firearms described in the Indictment, PSR, and Plea Agreement.

In the early morning hours of October 12, 2019, officers from the Hamden Police Department ("Hamden PD") responded to a 911 report of shots fired in a residential neighborhood

---

[1] The Government will likely seek to modify Paragraph 11 of the PSR. This paragraph did not appear in the Draft PSR and thus undersigned counsel did not address it in its initial requests for modification. It is undersigned counsel's understanding that a more specific assessment would represent that Mr. Barnes was never charged with this shooting.

near the Merritt Parkway.  Shortly after, officers conducted a traffic stop on a car they had observed driving at a high rate of speed away from the area of the gunshots.  Understandably on high alert following the report, the Hamden PD officers loudly and clearly instructed the vehicle's occupants to place their hands outside of the car windows while police approached.

Upon arriving at the vehicle, Hamden PD officers took time to speak with the occupants of the vehicle, namely, the driver of the vehicle, and Mr. Barnes, the sole passenger.  Just as the situation began to naturally diffuse, one of the responding officers identified that Mr. Barnes was concealing at least one firearm underneath his legs.   Immediately snapping back into a reactive posture, the responding officers attempted to safely remove Mr. Barnes from the car by opening the door and unhooking his seatbelt.  Mr. Barnes took off, running past the passenger-side officer and across the street through a nearby commercial parking lot.  As he bolted out of the car, not one, but two firearms fell from where he had been sitting: one black Taurus Millennium G2 9mm handgun bearing serial number TK040325, and one black and silver Springfield XD-40 .40 caliber handgun with an obliterated serial number, and as charged in the Indictment.  Police later recovered .40 caliber casings near the Merritt Parkway exit ramp where the gunshots were first reported.

Mr. Barnes, now on the run, ignored the verbal commands of the responding officers.  As he sprinted from the scene, an officer chasing him replaced his duty weapon to employ a non-lethal taser device, which had no effect.  Mr. Barnes was not apprehended until he was effectively tackled by the officer who had pursued him.  Shortly following his arrest, Mr. Barnes made statements that indicated he took full responsibility for the contraband found in the vehicle.

## II.   STATUTORY AND GUIDELINES EXPOSURE

### A.   **Statutory Exposure**

Based on his plea of guilty to a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), the defendant faces a maximum term of imprisonment of 10 years, a maximum term of supervised release of three years, and a maximum fine of $250,000, as well as a $100 special assessment. Restitution is not applicable in this case.  *See* PSR ¶¶ 86, 89, 93, 94, 98.

### B. Guidelines for the Instant Offense

The parties agreed, pursuant to a plea agreement dated July 14, 2020, on the following Guidelines Stipulation:  the defendant's base offense level under U.S.S.G. § 2K2.1 is 20. That level is increased by four under U.S.S.G. § 2K2.1(b)(4)(B), based on one of the firearms having an obliterated serial number. Three levels subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, resulting in a total offense level of 21. Based on an initial assessment, the parties agreed that the defendant fell within Criminal History Category IV. Accordingly, the parties agreed that the defendant faced a Guidelines range of 57 to 71 months of imprisonment, one to three years of supervised release, and a fine range of $15,000 to $150,000, pursuant to U.S.S.G. §§ 5D1.2 and 5E1.2(c)(3). Plea Agreement at 4.

The base offense level of 20 specified in the plea agreement was based on the defendant having committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance.  *See* U.S.S.G. § 2K2.1(a)(4)(A). Specifically, the defendant had been convicted of Robbery in the First Degree with a deadly weapon in the State of Connecticut, in violation of Conn. Gen. Stat. § 53a-134, on or about April 21, 2010.

The PSR reflects the same total offense level, Criminal History Category, and Guidelines range that was agreed to by the parties in the Plea Agreement. PSR ¶¶ 25, 35, 87, Plea Agreement at 4. The PSR also indicates that the Guidelines term of supervised release is one to three years,

the Guidelines fine as $15,000 to $150,000, and a $100 Special Assessment, which is the same term of supervised release, the same fine range, and the same Special Assessment as calculated by and agreed upon by the parties. *See* PSR ¶¶ 90, 94, 95; Plea Agreement at 4.

### C.  Parties' Agreement Regarding Departures and Non-Guidelines Sentence

With respect to the instant offense, the parties agreed in the plea agreement that both parties reserved their right to argue for an upward or downward departure from the sentencing Guidelines range of 57 to 71 months. Plea Agreement at 5. In addition, the defendant agreed that he would not appeal or collaterally attack his sentence provided that the sentence does not exceed 71 months of imprisonment, a three-year term of supervised release, and a $250,000 fine. Plea Agreement at 6. The parties also agreed that the Guidelines identified in the Plea Agreement were not binding on the Court. Plea Agreement at 5.

The parties further agreed that the Government would not object to any request that the sentence imposed run concurrent with specific state sentences, as identified in the Plea Agreement. Plea Agreement at 5.

## III.  LEGAL STANDARD

Following the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220, 243-245 (2005), which rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence." *See United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006). The § 3553(a) factors include: (1) "the nature and circumstances of the offense and history and characteristics of the defendant;" (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense,

to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the defendant, and (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) the kinds of sentences available; (4) the sentencing range set forth in the guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a). The Second Circuit reviews a sentence for reasonableness. *United States v. Canova*, 412 F.3d 331, 350 (2d Cir. 2005). The reasonableness standard is deferential and focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)." *Id*.

This case involves a repeat offender who, despite years spent in custody with time for reflection, and even after making tangible progress in becoming a productive member of society, consistently reverts back to behavior that endangers the community. In the Government's view, a thorough review of the § 3553(a) factors counsels that a sentence of at or about 71 months of imprisonment, at the upper end of the parties' stipulated Guidelines range of 57 to 71 months, followed by a term of supervised release, would be just, appropriate, and "sufficient, but not greater than necessary, to comply with [§ 3553(a)'s] purposes."

IV.  **DISCUSSION**

Applying the relevant factors to this case:

A.  **History and Characteristics of the Defendant**

The defendant's childhood was horrific. The mental, emotional, and physical trauma outlined in the PSR is likely, and hopefully, unfathomable to most citizens. That the defendant has been able to accomplish anything positive in his life should be rightfully acknowledged as a

credit to his perseverance and his potential to become a contributing member of society. Between earning his GED, obtaining his Certified Nurses Aid and Hospice Aid qualifications, and, for the most part, being able to successfully obtain various forms of employment when not incarcerated, the defendant has notched some significant victories over his past. PSR ¶¶ 76, 78-81.

Reflecting on his upbringing, the defendant now rationalizes some of the poor decisions he made as a teenager, not unreasonably linking it to his childhood trauma. Defendant's Sentencing Memorandum at 7-8. However, at the time of his arrest here, he was 28 years old. On October 12, 2019, he was wanted on a totally separate firearms charge out of New Britain, Connecticut, and had another active warrant out of Waterbury, Connecticut, for a failure to appear at a hearing related to the 2009 Robbery case. It was not a teenager who led Hamden PD officers on a foot chase through the community following a 911 report of gunshots; it was the fully grown adult who now faces sentencing today.

The defendant's past may very well haunt him for the rest of his life. But the positive steps he has made in previous instances of incarceration, and in his current acknowledgement of his substance abuse problems, is a double-edged sword. On one hand, he has shown a propensity to overcome astounding adversity; on the other hand, it indicates that, as full grown adult, he is fully aware of the difference between the right and wrong choices, respectful and disrespectful behavior, and legal and illegal activity – and he still opts for destructive decisions. A sentence at the top of the agreed-upon Guidelines range is an appropriate response to the defendant's deliberate choices to imperil those around him.

      **B.**      <u>**Seriousness of the Offense and Promoting Respect for the Law**</u>

A sentence at or about 71 months of imprisonment would both underscore the seriousness of the offense and promote a respect for the law, two concepts outlined under U.S.S.G. § 3553(a)

that the defendant has struggled with in his life thus far. The defendant has an extensive criminal history, including firearms- and drug-related offenses. PSR ¶ 112. It is evident by the defendant's prior firearms-related convictions that the present offense is not an anomaly. *See* PSR ¶¶ 29, 30. Specifically, this will be his third conviction for a firearms-related offense. In fact, the defendant was still on probation after serving ten years for Robbery in the First Degree with a Deadly Weapon, Carrying a Pistol without a Permit, and Sale of Illegal Drugs, when he committed the instant offense. PSR ¶ 34. And barely four months after he was released from a transitional placement for the aforementioned convictions, the defendant was charged with Criminal Possession of a Firearm. PSR ¶ 37.[2] The defendant's time spent in jail for prior firearms-related offenses demonstrates that he has not yet developed a respect for adhering to the law. A federal sentence at or about 71 months of imprisonment would provide the defendant an opportunity to finally develop an appreciation for the laws that bind the rest of society.

        C.        **<u>Protection of the Public</u>**

Such a sentence also serves the purposes of protecting the public. The defendant's Springfield XD-40 handgun had an obliterated serial number, implying that it was specifically altered to be untraceable by current gun control measures. It is hard to imagine a legitimate purpose that a convicted felon might have for possessing two firearms, let alone one of them being rendered untraceable. The Government contends that the protection of the public from un-serialized and illegally-obtained firearms would be supported by a sentence of 71 months, at the top of the agreed-upon Guidelines range.

Moreover, the undisputed facts show that the defendant's actions leading up to his arrest on October 12, 2019, placed himself, law enforcement, and the public in danger. The defendant

---

[2] Per PSR ¶ 37, this case is currently pending.

fled from police officers, refused to comply with commands to stop, and physically resisted arrest, including continuing to flee after a police officer deployed one of his tasers. PSR ¶ 7. This behavior is particularly disconcerting today, at a time of heightened tensions during police interactions with the public. The defendant's foolish behavior on October 12, 2019 may very well have reverberatory effects on the Hamden community. For example, when those same responding officers approach a suspicious vehicle in the future, their history with Mr. Barnes might understandably cause them to be less likely to give the future vehicle's occupants the benefit of the doubt, and or to be more wary of deescalating their own weapons posture; though much has been said of the public's eroding trust in law enforcement, Mr. Barnes' actions have the effect of undermining law enforcement's trust in the public.

The defendant's behavior following his arrest is consistent with the disciplinary tickets for fighting, disobedience, and interfering with security that the defendant accrued in his previous prison sentence and current pre-trial detention. PSR ¶ 31. Like the defendant's pattern of firearms-related offenses, this behavior is clearly not an anomaly. The Government believes that a sentence of 71 months is sufficient for the defendant to reflect on danger imposed on the community when he engages in the above behavior.

> **D.    Educational or Vocational Training, Medical Care, or other Corrective Treatment**

Given the defendant's substance abuse issues detailed in the PSR, the Government has no objection to the recommendation that the defendant be considered for the Bureau of Prison's 500-hour Residential Drug Abuse Program and/or the Nonresidential Drug Abuse Program. PSR ¶¶ 107, 108. The Government similarly has no objection to the recommendation that the defendant be considered for the Bureau Rehabilitation and Values Enhancement program. PSR. ¶ 108.

Indeed, an extended time in prison may allow for the defendant to more fully take advantage of the wider range of available development-focused programs.

The Government commends the defendant on his attainment of his GED and college credits during his prior incarceration. These accomplishments are an encouraging sign that Mr. Barnes will take advantage of additional educational and vocational programs offered by the Bureau of Prisons to enhance his potential to become a productive member of society when he is released from prison.

**V.     CONCLUSION**

The Government is sympathetic to the defendant's significant childhood trauma and history of substance abuse. It is further appreciative of his prompt acceptance of responsibility. However, those sentiments cannot extend to endangering the public and ignoring the precepts of law. Accordingly, when considering the factors outlined in Section 3553(a) and the context and relevant conduct surrounding this offense, the Government respectfully submits that the reasonable sentence which is sufficient, but not greater than necessary, to satisfy the objectives of federal sentencing, would be 71 months of imprisonment, followed by a term of supervised release.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

*/s/Margaret M. Donovan*
MARGARET M. DONOVAN
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv09772
Office of the United States Attorney
157 Church Street
New Haven, CT  06510
(203) 821-3700

<u>CERTIFICATION</u>

I hereby certify that on October 28, 2020, the foregoing Memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

                      */s/ Margaret M. Donovan*
                      MARGARET M. DONOVAN
                      ASSISTANT UNITED STATES ATTORNEY